UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARIA T. OVIEDO-ALVARENGA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:16-cv-00815-SEB-MJD |
| | ) |
| CAITO FOODS SERVICE INC., | ) |
| | ) |
| Defendant. | ) |

**ORDER ADOPTING AND AFFIRMING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Maria T. Oviedo-Alvarenga ("Oviedo") has brought this action against her former employer, Caito Food Service ("Caito"),[1] alleging that it discriminated against her because of her gender and retaliated against her for raising the issue of harassment by another Caito employee, all in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Caito filed a Motion for Summary Judgment [Dkt. No. 37] on March 23, 2017. This case was referred to Magistrate Judge Mark Dinsmore for a report and recommendation. It is now before the Court on the parties' objections to the Magistrate Judge's Report and Recommendation ("R&R") [Dkt. No. 60]. For the reasons detailed in this entry, we ADOPT the Magistrate Judge's recommendation to GRANT IN PART and DENY IN PART Defendant Caito's Motion for Summary Judgment.

---

[1] The company is now known as CFS Family Holdings, Inc.

1

## Factual and Procedural Background

On April 13, 2016, Oviedo filed her Complaint in this court after receiving her right to sue notice from the Equal Employment Opportunity Commission (Dkt. No. 1). The Complaint alleges that, throughout her employment, she (along with other female co-workers) were harassed by Operations Director Dan Correll ("Correll") based on to her female gender; for example, on three occasions Correll "pointed at [her] chest, touched her chin, flipped her hair, and called her an "asshole." Dkt. No. 23 (Compl.) at 2. In support of her gender discrimination claim, Oviedo asserts that shortly after she reported this harassment to Carrie Frizzell ("Frizzell"), Vice President of Caito's Human Resources Department, Correll called her and two co-workers to his office and demanded to know "who spoke to HR." *Id*. at 3. Further, Oviedo says, the next day he told her that "he would need a tissue box because he was going to make a lot of people cry." *Id*. Oviedo contends that although her direct supervisor, Dan Gatto ("Gatto"), gave her a positive performance review, Correll "continued to intimidate [her], give [her] additional duties, criticize [her] for tasks that were outside of her control, and give men preferential treatment." *Id*. at 3. On July 7, 2015, Frizzell and Gatto met with Oviedo and told her that "she was being terminated because she did not accomplish projects on time." *Id.* Oviedo "believes that she was terminated in retaliation for complaining about workplace harassment in violation of Title VII and that this vague and alleged reason was merely a pretext for discrimination and retaliation." *Id.*

Caito filed its summary judgment motion on March 23, 2017. Dkt. No. 37. On April 26, 2017, the motion (along with Oviedo's response) were referred to Magistrate

Judge Dinsmore for issuance of proposed rulings and a recommended disposition. Dkt. No. 43.

On August 8, 2017, Magistrate Judge Dinsmore issued his Report and Recommendation ("R&R"), recommending that the court grant Caito's summary judgment motion as to Oviedo's hostile work environment and gender discrimination claims and deny Caito's motion with respect to Oviedo's retaliation claim, which should be allowed to proceed to trial. Dkt. No. 60 (R&R). Regarding Oviedo's claim that she was harassed and subjected to a hostile work environment on the basis of her gender, the Magistrate Judge found, after setting forth the applicable legal framework, that "[n]o reasonable juror could find Correll's conduct objectively severe and pervasive as that term is understood." *Id.* at 16. Noting that while Correll's act of gesturing at Oviedo's chest, his flipping her hair, massaging the shoulders of Oviedo's assistant, and using crude language were "inappropriate and undignified," they did not amount to "employment-changing behavior"—particularly when Correll stopped such behavior each time Oviedo asked him to. *Id.*

Turning to Oviedo's discrimination claim, the Magistrate Judge found that, based on the record before the court, no reasonable juror could find that Oviedo was terminated on the basis of her gender. Caito has asserted that it terminated Oviedo for her failure to follow through with assignments and her poor communication with management and

companies staffing Caito's temporary workers, which reasons the Magistrate Judge credited.[2] *Id.* at 18-22.

Finally, the Magistrate Judge concluded that Oviedo has presented sufficient evidence to warrant a jury determination on her retaliation claim. *Id.* at 21-26. Specifically, Magistrate Judge Dinsmore found that that there was a genuine issue of material fact as to each of the following issues:

- whether Oviedo engaged in statutorily protected activity by complaining to Frizzell about Correll's harassment;
- whether a reasonable juror could find that the reassignment of assistant Munoz to another manager, which led to increased criticism of Oviedo for her failure to timely follow through and communicate with others and which ultimately led to Oviedo's termination, amounted to a such a change that it would dissuade an employee from protected activity;
- whether there was a causal connection between Oviedo's complaint to Frizzell and Munoz's reassignment.

R&R at 21-26. On this third point, the Magistrate Judge found that the following facts gave rise to a reasonable inference of causation:

- Frizzell spoke with Gatto and Correll's boss regarding Oviedo's complaints, though Frizzell did not "name names."
- Just a few days after Oviedo's complaints, Correll rounded up Oviedo and two other Caito managers and demanded to know who complained to human resources.
- Around the same time as Correll's questioning, he told Oviedo that he would need boxes of tissues because he was going to make people cry.
- Briefly thereafter, Correll notified Oviedo that Munoz would be reassigned to work with another manager.

*Id*. at 25. Magistrate Judge Dinsmore rejected Caito's argument that it had presented admissible evidence to show that Correll had no knowledge of Oviedo's report of

---

[2] Oviedo does not challenge (and Caito, of course, agrees with) this finding in the R&R, so we need not address it further.

4

harassment to Frizzell and, accordingly, could not have retaliated against Oviedo for making such a complaint. Caito's evidence consisted of a note written by Frizzell stating that the decision to reassign Munoz was made a month prior to Oviedo's complaint to Frizzell about Correll's behavior. Caito also argued that an inference that Correll knew about Oviedo's complaint is unreasonable because Frizzell testified she did not tell Correll, which assertion she also corroborated. *Id*. at 24-25. Notwithstanding this testimony, the Magistrate Judge found that a reasonable jury, in evaluating these facts, could conclude that Correll did know about the complaint which gave rise to his retaliatory towards Oviedo. A trial is therefore necessary to resolve these factual and causation issues. *Id*. at 25-26. The Magistrate Judge also concluded that a jury trial was necessary to resolve the issue of whether Oviedo's evidence successfully links Munoz's reassignment to Oviedo's work performance issues that eventually led to her termination. *Id*. at 26, n.8.

On August 23, 2017, Caito and Oviedo each filed their respective objections to the R&R. Dkt. Nos. 64 and 65. On September 6, 2017, Caito and Oviedo responded to each other's objections. Docket Nos. 66 and 67, respectively. The objections are now fully developed and ripe for ruling.

**<u>Standard of Review</u>**

A district court reviews *de novo* any portion of a magistrate judge's report and recommendation to which written objections have been made. *See* Fed. Rule Civ. P. 72(b). "The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with

5

instructions." *Id.* When no objection is made to a portion of the report, the district judge subjects that portion of the report to a clear error review. *Id.* When performing such a review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id. See Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 759–761 (7th Cir. 2009). We address below only the issues regarding which objections have been interposed, finding "no clear error" with regard to the Magistrate Judge's findings in all other respects.

## Discussion

### I. Oviedo's Objections

#### A. Objection #1—Alleged Factual Misstatements

Oviedo contends that the Magistrate Judge's R&R contains "three misstatements of fact." Pl.'s Obj. at 3-4. It cites to her deposition as opposed to her declaration in discussing Caito's allegation about her handling of gate cards issued to former contract employees. *Id.* at 3. This is at most an insignificant discrepancy since the Magistrate Judge explicitly stated that he accepted in his R&R Oviedo's version of this event, crediting her explanation that her duties did not include responsibility for collecting the gate cards of terminated employees. R&R at 13. Oviedo herself recognizes that this misstatement "was simply an oversight." Pl.'s Obj. at 3. Thus, we find no factual error requiring correction.

Second, Oviedo explains that a portion of the following sentence in the R&R contains a factual inaccuracy:

6

> On June 30, Frizzle created two "Record of Occurrence"
> incident report forms due to Ms. Oviedo's performance issues.
> One dealt with Ms. Oviedo's delay in filling the CSR position
> [discussed fully in the facts section of the R&R], the other
> addressed Ms. Oviedo's delay in completing the SOP [also fully
> discussed in the R&R]. Both had a "Date of Incident" of June 24.
> Neither was shown to Ms. Oviedo.

Pl.'s Obj. at 3. In fact, Oviedo says, the first "Record of Occurrence" had to do with Oviedo's alleged delay in posting for a QA Tech on a Careers in Food job board, and not the CRS position. *Id.* As Caito points out, however, this distinction is immaterial (Def.'s Obj. at 2), since its relevance extends only to Oviedo's claim that she was terminated on the basis of her gender, which issue was resolved against her by the Magistrate Judge, who determined, based on the undisputed evidence of record, that Oviedo's supervisor, Gatto, had made the termination decision based on her failure to perform her work in a satisfactory fashion. R&R at 10, 12, 18, and 21. Oviedo has not objected to this ruling. Pl.'s Obj. at 7-14. This factual discrepancy is neither significant nor material.

Oviedo's final factual disagreement is with the statement in the R&R [p. 14] that "Correll did not recommend Ms. Oviedo's termination nor was involved in Gatto's termination decision." According to Oviedo, Correll "provided the precise factual information that cause Ms. Oviedo's termination." Pl.'s Obj. at 4 (citing Frizzell Dep. at 58-59). Oviedo maintains that Correll's June 30, 2015 phone call led to Caito's decision to terminate her. *Id.* (citing Gatto Dep. at 44-46).

Again, this issue relates only to Oviedo's sex discrimination claim, the summary dismissal of which Oviedo does not challenge. In any event, we agree with Caito that this objection is both factually and legally inaccurate. Def.'s Obj. at 3 (citing *Woods v. City of*

7

*Berwyn*, 803 F.3d 865, 870 (7th Cir. 2015) (rejecting a claim that an employee who reported concerns implicating a coworker influenced a subsequent termination decision). The Magistrate Judge determined that the undisputed evidence showed that Gatto decided to terminate Oviedo after receiving complaints from various Caito employees, including Frizzell, all of whom were sources of information regarding Oviedo's poor follow-through and unresponsiveness to work emails. R&R at 18. To the extent this objection by Oviedo relates to her retaliation claim and is thus relevant and persuasive, we leave for determination on another day. The Magistrate Judge properly noted that the factfinder at trial will be required to decide whether the reassignment of Munoz is causally linked to Oviedo's work performance deficiencies that ultimately led to her termination. R&R at 26, n.8.

**B. Objection #2—Alleged Omitted Material Facts**

Oviedo's second objection to the R&R focuses on the alleged omission of "many material facts which should have been considered" (Pl.'s Obj. at 5-7). Specifically, Oviedo references her Declaration [Docket No. 55-1], arguing that those averments along with other material facts set out in her opposing brief in response to the summary judgment motion should have been considered by the Magistrate Judge and in the light most favorable to her. *Id*. at 5. All of these allegedly "omitted facts" have to do with the June 2015 events involving the terminations by Caito of several temporary workers who had not returned their gate cards, for which failure Correll faulted Oviedo. Oviedo contends that she in fact properly performed her only responsibility in this instance by notifying the staffing agency that provided the temporary workers, that she was not

8

responsible for collecting gate cards from any of the former workers, and that the staffing agency who had employed these workers (the Morales Group) ultimately accepted responsibility for the employees' unauthorized returns to Caito's premises after their terminations.

We note that the gist of each of these facts is included in the R&R. Though the R&R does not reference each individual fact asserted by Oviedo, it clearly addresses Oviedo's overall argument. In her objection, Oviedo merely notes the name of the Caito employee assigned to collect gate cards issued to terminated temporary employees (Amanda Fults), stating that, to do so, Fults used a computer program to which Oviedo did not have access. These details, however, are entirely superfluous, adding nothing substantive to the analysis explicated in the R&R. Oviedo also includes in her objection the email correspondence from employees of the Morales Group, ostensibly to demonstrate their failure to communicate with their own employees, which according to Oviedo, explains the unauthorized use of their gate cards to enter Caito premises following their terminations. As noted in the R&R and referenced previously in this entry, the Morales Group has accepted responsibility for this error. Oviedo stresses that she was unaware that Caito had in fact faulted her for her handling of this incident prior to the commencement of this litigation, but, as the R&R acknowledges, Caito's criticism of her was irrelevant because this incident was not cited in its EEOC response.

Thus, we hold that none of these supplemental facts impacts the analysis of Oviedo's claim, or warrants revision of the R&R, and we overrule Objection #2.

### C. Objection #3—Alleged Reliance on the Incorrect Legal Standard and Erroneous Conclusion that the Harassment Suffered by Oviedo Was not Severe or Pervasive

Oviedo contends that the Magistrate Judge applied the incorrect legal standard in ruling on her hostile work environment claim. Pl.'s Obj. at 7-10. The Magistrate Judge properly held that a plaintiff must satisfy the following elements to prevail on an harassment, or hostile work environment, claim: (1) she endured unwelcome sexual harassment; (2) she was harassed because of her sex; (3) the harassment was so severe or pervasive that it altered the conditions of employment and created a hostile work environment; and (4) there is a basis for employer liability. R&R at 15 (citing *Niscahn v. Stratosphere Quality LLC,* 865 F.3d 922, 929 (7th Cir. 2017); *Turner v. the Saloon, Ltd.*, 595 F.3d 679, 684 (7th Cir. 2010)).

The Magistrate Judge further ruled, in determining whether a working environment is hostile in this context, courts consider factors including "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 463 (7th Cir. 2002), *cert. denied*, 537 U.S. 820 (2002) (internal quotation omitted). Conduct that is merely unpleasant, but not severe or pervasive, will not constitute a hostile work environment prohibited by Title VII. *See Saxton v. American Telephone and Telegraph Co.*, 10 F.3d 526, 533 (7th Cir. 1993).

Oviedo's objection is based on the Magistrate Judge's use of the phase "severe and pervasive," rather than "severe or pervasive." This phrase appears in the R&R following a prior reference which Oviedo concedes to be correct. R&R at 15-16 ("a reasonable jury could not find Correll's conduct "objectively severe and pervasive as that term is understood."). Our analysis of this objection does not turn on so trivial a difference as Oviedo seeks. The Magistrate Judge correctly explained that whether harassment rises to an actionable level depends on the totality of the circumstances based on such factors as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." R&R at 15 (citing *Worth v. Tyler*, 276 F.3e 249, 267 (7th Cir. 2001)). Citing Seventh Circuit case law, he noted that limited contact with non-intimate areas of a person's body does not by itself create a hostile environment. *Id*. at 16 (listing cases). This legal analysis is without error; Oviedo's objection is nothing more than an inconsequential nitpick. Accordingly, we overrule this objection.

Oviedo has also failed to establish that the Magistrate Judge erred in analyzing her hostile work environment claim. As noted above, the Magistrate Judge relied on the third element of claim, the severity or pervasiveness of the harassment, as dispositive here. R&R at 16. He correctly outlined the factual basis of her claim:

- On three different occasions, he put his finger close to Ms. Oviedo's chest in what was, as he put it, a "made you look" action.
- On about two other occasions, Correll called Oviedo and Munoz "assholes." The first time, he walked into Oviedo's office and said, "Hey, assholes." When Oviedo and Munoz ignored him, he wrote "Hey, how are you, assholes?" on a whiteboard in the

11

office. Oviedo again ignored him, and he erased the sentence. Oviedo explained that she heard Correll refer to both men and women as "assholes," but she never heard him say this directly to a male employee. On different occasions, Correll referred to Caito's human resources team as "HR bitches."
- Once Correll "flipped" Oviedo's hair, and she told Correll that she did not like his touching her hair, after which he did not repeat it.
- Correll massaged Munoz's shoulders, which allegedly made Munoz as well as Oviedo uncomfortable.

R&R at 2-5.

Acknowledging that Correll's conduct was "inappropriate and undignified," the Magistrate Judge nonetheless correctly determined that the finger gesture, the touching of Oviedo's hair, the massage of Munoz's shoulders, and the crude language "simply are not the stuff of employment-changing behavior." *Id*. at 16. That Correll ceased the offensive behavior every time Oviedo asked him to do so buttressed this conclusion. *Id*.

Oviedo argues that "Correll's use of the sexually-charged term 'bitch' was itself severe," which verbal abuse exacerbated the harassment she received. Pl.'s Obj. at 8-9 (citing *Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993)). Oviedo again invokes the decision in *Passananti v. Cook Cty.*, 698 F.3d 655, 668-89 (7th Cir. 2012) as she did in her summary judgment motion in arguing that the Seventh Circuit "sees no reason to treat gender based harassment claims any differently than racial harassment claims with racially-charged words." Correll's use of the words "bitches" and "assholes" along with writing the word "asshole" on the white board in Oviedo's office, she contends, would permit a reasonable jury to find that she was subjected to a hostile work environment. Caito, of course, disagrees.

Oviedo has not identified any error in the R&R based on a misunderstanding or erroneous application of the holdings of these cases by the Magistrate Judge. Context

12

matters, Oviedo concedes, and she has not succeeded in showing that the relevant caselaw dictates a contrary result. *Passananti'*s holding is easily distinguishable because there the supervisor "repeatedly and angrily called [the plaintiff] a bitch to her face and in front of their coworkers," and frequently and with hostility called her "stupid bitch," fucking bitch," and lying bitch." *Passananti*, 689 F.3d at 658. The Magistrate Judge's findings reflect and the undisputed evidence established that Correll did not direct his vulgar language specifically at Oviedo or use it in way to target solely women; in fact, Correll apparently admitted that at least some of his untoward language did target men. *See Passananti*, 689 F.3d at 665.

Oviedo asserts that Correll, if not technically her supervisor, was effectively her supervisor. This characterization allows her to invoke the benefit of court decisions that treat harassing conduct as more severe when meted out by a supervisor. According to Oviedo, Correll acted as her supervisor by assigning projects to her and approving her vacation time. Caito does not dispute that Correll interacted with Oviedo on certain projects, but vigorously asserts that it was Gatto, not Correll, who was in fact Oviedo's supervisor. Def.'s Resp. at 8-10; *Vance v. Ball State Univ.*, 133 S.Ct. 2434, 2448 (2013) ("the ability to direct another employee's tasks is simply not sufficient" to establish supervisory status). We agree that Oviedo's contention is incorrect both legally and factually, which issue is discussed *supra* in conjunction with Oviedo's first objection. *See* R&R at 2 (noting that Oviedo reported to Gatto and Frizzell). This objection fails because Oviedo's attempt to portray Correll as her supervisor falls short of the required mark.

13

### D. Objection #4—Retaliation Claim Improperly Confined to Munoz's Reassignment as Opposed to Oviedo's Termination

Oviedo's final objection to the R&R is based on the Magistrate Judge's reliance on the reassignment of Munoz, as opposed to Oviedo's employment termination, as the "materially adverse action" element of her retaliation claim. Pl.'s Obj. at 10-14; R&R at 24. Oviedo argues that it was Correll who caused each of the alleged performance deficiencies that Caito has cited as reasons for Oviedo's termination, and that his June 25, 2015 phone call to Gatto and Frizzell about the terminated temporary workers' unauthorized entry on Caito premises was the specific cause of her termination. Pl.'s Obj. at 10-11. Oviedo characterizes Correll's alleged influence as the "cat's paw" causing her termination. *Id*. at 11.

As Caito notes, Oviedo did not argue "cat's paw" liability at the summary judgment briefing stage. Def.'s Resp. at 11-14; *see* Docket No. 44. "Cat's paw" liability has been specifically invoked for the first time in Oviedo's objections. Thus, the theory was not specifically addressed by the Magistrate Judge in ruling on the summary judgment motion. Having failed to raise it initially, the issue cannot be deemed a matter properly reserved for review in the context of objections to the Magistrate Judge's R&R. Def.'s Resp. at 11-14. We therefore deem this issue waived. *Salas v. Wis. Dep't of Correction*, 493 F.3d 913, 924 (7th Cir. 2007) ("a party forfeits any argument it fails to raise in a brief opposing summary judgment."). In her response to Caito's objections, Oviedo does not argue otherwise. Pl.'s Resp. at 1-7. We find, therefore, no error in the R&R on this basis and affirm this determination.

In any event, Oviedo's objection does not accurately reflect the Magistrate Judge's finding on the issue of the "materially adverse action element" in her retaliation claim. The Magistrate Judge found that a reasonable jury could evaluate the factual scenario here, all of which events occurred in rapid succession—Oviedo's harassment report; Frizzell's discussion with Correll's boss about Oviedo's complaints; Correll's quizzing Oviedo and others about who complained to human resources; Correll's comment that he needed tissue boxes because he would make people cry; and Correll's transfer of Munoz shortly or immediately thereafter—and find a retaliatory intent on Correll's part. R&R at 24-25. The Magistrate Judge did not ignore any aspect of Oviedo's claim, simply recognizing instead recognized that an increase in workload is not legally significant for purposes of conducting the retaliation analysis in the absence of discipline for failure to complete work. R&R at 24 (citing *Lapka v. Chertoff*, 517 F.3d 975, 986 (7th Cir. 2008)). The Magistrate Judge further recognized that Oviedo received the ultimate discipline—termination—for her failure to complete work, and held that a jury trial is required to resolve the parties' factual disputes surrounding Oviedo's retaliation claim. For these reasons, we again overrule Oviedo's objection.

## II. Caito's Objections

### A. Objection #1—Alleged Erroneous Finding of a Causal Connection Between Oviedo's Complaint and Munoz's Reassignment

Caito objects to the Magistrate Judge's finding that Oviedo presented sufficient evidence of a causal connection between her complaint to Frizzell and the reassignment of Munoz to survive summary judgment on her retaliation claim. Def.'s Obj. at 17-19, 23.

Having considered the parties' arguments on this issue, the Magistrate Judge noted both Oviedo's testimony that Correll reassigned Munoz following Oviedo's discussion with Frizzell as well as Caito's "disagreement" with Oviedo's timeline. R&R at 25. Marshalling the following facts, the Magistrate Judge found that a reasonable jury could infer causation:

- Although she "did not name names," Frizzell spoke with Gatto and Correll's boss about Oviedo's complaints [Docket No. 45-2 ("Frizzell Dep.") at 39]
- Shortly after Oviedo made her complaint, Correll summoned her and two other managers and asked who complained to HR;
- Around the same time, Correll told Oviedo that he would need a box of tissues because he was going to make people cry;
- Immediately after these incidents, Correll transferred Munoz so that she was no longer available to assist Oviedo.

R&R at 25.

Caito maintains that the evidence referenced in its summary judgment motion shows that the decision to reassign Munoz from Oviedo to another Caito employee was made prior to Oviedo's May 14, 2015 complaint to Frizzell. In support, Caito again relies—as it did before the Magistrate Judge—primarily on handwritten notes by Frizzell dated April 15 and 16, 2015, relating to Munoz's reassignment. R&R at 8, n. 3; 24-26. According to Caito, Frizzell's notes negate any inference of a causal connection between Oviedo's complaint and Munoz's reassignment.

However, the Magistrate Judge did not regard these notes as fully dispositive on this issue. R&R at 8, n. 3. Specifically, the notes themselves are unclear as to whether they concern the decision to reassign Munoz, the date of her actual reassignment, or even whether a decision had even been made. Frizzell Dep. Ex. 26 ("4/15/15 move Amada

16

[Munoz] to Marcos . . . she may need help . . .4/16/15 we discussed move . . .we think it is a good idea . . help Amada + Maria"). While Caito insists that the notes support its version of the reassignment timeline, Oviedo has testified that Munoz was reassigned by Correll after her May 2015 complaint, which rebuts Caito's version of the events. We share the Magistrate Judge's view that the parties' factual disputes concerning this issue warrant a trial determination of whether or not Munoz was reassigned in retaliation for Oviedo's complaint against Correll. R&R at 8, n. 3; 24-26; *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (well-settled law establishes that a court's role under Rule 56 is limited to determining, as a threshold matter, whether a genuine dispute exists as to material facts.); *Williams v. Office of Chief Judge of Cook Cty.*, 839 F.3d 617, 626 (7t h Cir. 2016) (citing *Ortiz v. Werner Enters., Inc*., 834 F.3d 760, 763 (7th Cir. 2016) (noting no distinction between direct or indirect evidence of causation and holding that a court must simply inquire whether a reasonable factfinder could conclude that a plaintiff's protected activity caused the adverse employment action).

Alternatively, Caito argues, even if Oviedo succeeds in establishing that her complaint to Frizzell about Correll preceded Munoz's reassignment, Correll could not have engaged in retaliatory conduct because the evidence reflects that he had no actual knowledge of Oviedo's complaint. Def.'s Obj. at 19-23. This argument is based on Correll's testimony that no one conveyed Oviedo's complaints to him, and Frizzell's testimony that she never spoke to Correll about Oviedo's complaint, having raised the issue only to Correll's boss "without naming any names." *Id*. at 19-20. The Magistrate Judge's take on that sequence—Correll's quizzing Oviedo and other managers about a

17

human resources complaint and his comments to Oviedo— was that it suggests that Correll knew about the complaint and that Oviedo (or one of the others) was the source of it. Given the competing inferences arising from these events, Caito cannot succeed in its effort to establish the Magistrate Judge's finding as error, when he determined that a trial is necessary to resolve these issues. *See Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (as long as more than one reasonable inference can be drawn, and one such inference creates a genuine dispute of material fact, summary judgment on that ground is inappropriate; instead, the trier of fact is entitled to decide which inference to believe).

### B. Objection #2—Alleged Erroneous Finding on the Impact of Munoz's Reassignment

Caito next asserts that the R&R's factual linkage between Oviedo's termination and her loss of Munoz's assistance is erroneous, the result of which transformed a non-material adverse action into a "significant" one. Def.'s Obj. at 23-34. Relatedly, Caito challenges the Magistrate Judge's conclusion that Oviedo's ability to connect Munoz's reassignment to Oviedo's poor work performance which led to her termination is a factual issue to be resolved at trial. *Id*. at 26-29.

In support, Caito highlights its proffered reasons for terminating Oviedo, noting that she has offered no factual evidence linking the increase in her workload to the loss of Munoz's assistance, or establishing a tie between Munoz's reassignment and a retaliatory motive on Caito's part that worked against her. *Id*. at 24-26, 30-34. Caito acknowledges that the Magistrate Judge correctly analyzed the legal elements of a retaliation claim, but attempts to distinguish on factual grounds the case law on which he relied in an effort to

show that it does not support a recommendation that Oviedo's retaliation claim be decided by a jury. *Id*. at 23, 26-29. At most, Caito's arguments merely challenge the finding of sufficiency of the evidence by the Magistrate Judge as adduced by Oviedo allowing this issue to survive for trial. Faced with these factual disputes, the Magistrate Judge did not err in recommending that these issues be presented for resolution to a jury, and we accordingly overrule Caito's second objection.

### IV. Conclusion

For the foregoing reasons, Plaintiff's and Defendant's objections to the Magistrate Judge's Report and Recommendation are all OVERRULED. We adopt the recommendations set forth in the Report and Recommendation. Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART, allowing Plaintiff Oviedo's retaliation claim to proceed to trial.

IT IS SO ORDERED.

Date: 11/9/2017

_Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

**Distribution:**

Brian Burbrink
Jan Michelsen
OGLETREE DEAKINS NASH SMOAK & STEWART, PC
Brian.burbrink@odnss.com
Jan.Michelsen@odnss.com

Quincy E. Sauer
MACEY SWANSON, LLP
qsauer@maceylaw.com